[Civ. Nos. 3842, 3843. Second Appellate District, Division One.—
March 1, 1923.]

## TITLE INSURANCE AND TRUST COMPANY (a Corporation), Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Appellants.

[1] TITLE INSURANCE—SEARCH OF RECORDS—CERTIFICATE OF TITLE—CONTRACT.—A certificate issued by a title insurance and trust company which is directly limited to the condition of the record title, and wherein the company states that after a careful examination of the official record of the county, in relation to the title to the real property in question, it "hereby guarantees that the title to said property as it appears from said records" is vested in a designated person, is a contract of insurance, upon which a liability will accrue if the title is not as represented.

[2] ID.—GUARANTY OF TITLE—INDEMNITY—CONSIDERATION.—A certificate wherein the company issuing it states that "after a careful examination of the official records . . . in relation to the title of that certain real property hereinafter described, the —— Company, a corporation, . . . hereby guarantees that the title to said property as it appears from said records is vested in ——;" is a contract of indemnity; and being in writing, a consideration is implied.

[3] ID.—RECORDATION OF CONVEYANCES—PURPOSE OF CODE PROVISION.—Section 1213 of the Civil Code, which provides that "every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees," exists for the protection of those who acquire interests in real property by virtue of duly recorded instruments, and it does not prevent the record title from being the subject of insurance.

[4] ID.—FORM OF CERTIFICATE—NONCOMPLIANCE WITH STATUTE.—The fact that the form of guaranty certificate issued by a title insurance company does not specify all the facts set forth in section 2587 of the Civil Code does not deprive such certificate of its character as an insurance contract.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

1. Title insurance, note, **Ann. Cas.** 1914D, 637.

Jesse E. Stephens, City Attorney, and Wm. P. Mealey for Appellants.

O'Melveny, Millikin, Tuller & MacNeil for Respondent.

CONREY, P. J.—These are two actions in each of which the plaintiff seeks to recover an amount paid by it as a license fee demanded under the provisions of Ordinance No. 39600 (N. S.) of the city of Los Angeles. The payments were made under protest. Judgment has been entered in each case in favor of the plaintiff, and the defendant city appeals therefrom. The cases have been submitted jointly, for the reason that the questions involved in them are identical.

Section 12 of said ordinance provides for a license tax to be paid by "every person, firm or corporation conducting, managing or carrying on the business of examining, searching or investigating titles to real estate and issuing abstracts, statements or certificates, showing or purporting to show or certify to the condition or state of the title to any particular property or properties as disclosed by an examination of the public records, but which abstract, statement or certificate *does not insure or purport to insure* the title to real property or any interest therein."

Section 14 of article XIII of the constitution of the state of California was adopted on the eighth day of November, 1910. It provides for taxes to be levied against certain classes of corporations therein named. Subdivision (b) of that section declares that "Every insurance Company or association doing business in this State shall annually pay to the State a tax of one and one half per cent upon the amount of the gross premiums received upon its business done in this State, less return premiums and reinsurance in companies or associations authorized to do business in this State; *provided,* that there shall be deducted from said one and one half per cent upon the gross premiums the amount of any county and municipal taxes paid by such companies on real estate owned by them in this State. This tax shall be in lieu of all other taxes and licenses, state, county and municipal, upon the property of such companies, except county and municipal taxes on real estate, and ex-

cept as otherwise in this section provided; . . ." It is not claimed that any question arises in these cases concerning any exception provided in said section of the constitution.

Respondents contend that their business is solely an insurance business, and that it is not subject to the obligation to pay any tax or license fee on account of such business, other than their tax to the state. Appellant, on the other hand, contends that a part of the business of respondents is not insurance business, and that the city has the right to impose a license tax based upon and growing out of the right to conduct that business. It will be noted that the ordinance itself excepts from its operation any business in which the contract insures, or purports to insure, the title to real property or any interest therein. The question at issue here is not a question concerning the validity of the ordinance, but rather is a question of fact concerning the nature of the business transacted by respondents.

It is conceded that respondents do transact an insurance business. In the course of that business they issue a form of certificate whereby the insurer purports to guarantee and insure the insured person or persons against loss or damage not exceeding a stated sum, for a stated term of years, "which the said insured shall sustain during the life of this policy, by reason of any loss suffered affecting the title of the insured to the lot or tract of real estate hereinafter described; whether said loss is caused by failure of title, or by reason of any defects in, or liens or incumbrances on said real property." There follow, however, in this policy, certain exceptions relating to outstanding rights of persons in possession, or interests existing by virtue of instruments not recorded. [1] But a considerable part of the business of respondents consists in the issuance of certificates of title directly limited to the condition of the record title, and wherein the certificate states that "after a careful examination of the official records of the county of Los Angeles, state of California, and of the records of the federal offices located at Los Angeles, in relation to the title of that certain real property hereinafter described, the —— Company, a corporation, having its principal place of business in the city and county of Los Angeles, state of

California, hereby guarantees that the title to said property as it appears from said records, is vested in ———."

Counsel for the respective parties have argued these cases upon the theory, which we approve, that the decision depends upon the construction to be given to the certificate last above mentioned. If the business of issuing certificates of that kind is insurance business, then the license taxes in question have been wrongfully imposed, and respondents are entitled to recover the same.

Title insurance had become a recognized form of insurance in California and elsewhere prior to the year 1910, although it is more modern in its origin than are many other branches of insurance business. It has been defined as an agreement whereby the insurer, for a valuable consideration, agrees to indemnify the insured in a specific amount against loss through defects of title to real estate, wherein the latter has an interest, either as purchaser or otherwise. (38 Cyc. 344.) Generally, in other kinds of insurance, the policy protects the assured against matters that may arise during, and only during, a stated period after the issuance of the policy, but the risks of title insurance, although they may be referable to the contingency of future loss, are only designed to save the assured harmless from loss through defects, liens, and encumbrances that may affect or burden the title at the time when the certificate or policy is issued. There is no implied agreement to go beyond the conditions existing at the time the policy is issued and to assume a general liability to indemnify against future encumbrances. (38 Cyc. 349, 350.) But the distinction thus existing does not deprive title insurance of any of the essential elements which characterize the contract of insurance.

"Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability, arising from an unknown or contingent event." (Civ. Code, sec. 2527.) "Any contingent or unknown event, whether past or future, which may dammify a person having an insurable interest, or create a liability against him, may be insured against, subject to the provisions of this chapter." (Civ. Code, sec. 2531.) Counsel for appellant, in support of their contention that the certificate here in question is not a contract of insurance, go further and assert that it is

not a contract at all. They rely upon the decision of *Lattin*
v. *Gillette*, 95 Cal. 317 [29 Am. St. Rep. 115, 30 Pac. 545],
which they say presented "an exactly similar question."
In that action it appeared that, under employment for that
purpose, the defendants furnished to the plaintiff a cer-
tificate which stated that from a careful examination of the
records concerning the title to the described property "*we
find* the same vested in Jacob Birnbaum free from all en-
cumbrances." It was held that the certificate did not con-
tain any obligation or contract, but was merely the evidence
of an act done in purported satisfaction of the obligation
assumed in accepting the employment. But we think
that the certificate now under consideration is itself a con-
tract. The words "hereby guarantees" are words of con-
tract, whereas the words "we find," in the certificate in
the Lattin case, were only a statement of fact covering the
contents of the record and the opinion of the parties issuing
the certificate regarding the effect thereof. There was not,
as there is in the present case, a contract guaranteeing that
the record and its legal effect were as stated in the cer-
tificate. In the Lattin case there was merely the contract
implied in the acceptance of the employment, that the
records would be carefully examined, and that the defend-
ants would in good faith state their opinion concerning the
effect of the records. They would be liable for negligent
or other failure to perform that contract. The right of
action would accrue at once upon issuance of the certificate,
and it would be an action to recover damages for breach of
contract. But in the case of a certificate like that now
before us, the party entitled to the benefit of the guaranty
has a right of action to recover upon the contract contained
in the certificate itself, and the liability is one that does not
accrue until discovery of the loss that may be incurred if
the title is not as represented in the certificate. Section
339 of the Code of Civil Procedure, as amended in the year
1913, and by the same words as repeated in the further
amendment of that section in the year 1917 (Stats. 1917,
p. 299) declares that "The cause of action upon a contract,
obligation or liability evidenced by a certificate, or abstract
or guarantee of title of real property or policy of insur-
ance shall not be deemed to have accrued until the discovery

of the loss or damage suffered by the aggrieved party there-under.''

[2]   Appellant contends that the guaranty certificate of the plaintiffs is not an insurance contract, because it does not contain the element of indemnity and because it does not comply with certain sections of the Civil Code, and especially does not comply with section 2587.   That section states that a policy of insurance must specify the parties between whom the contract is made; the rate of premium; the property or life insured; the interest of the insured in property insured if he is not the absolute owner thereof; the risks insured against, and the period during which the insurance is to continue.

A contract in writing implies a consideration.   Since the guaranty, as we have indicated, runs against future loss that may be incurred if the record title shall prove to be different from that certified, it is a contract of indemnity.

[3]   Appellant contends that in the record title to property there is no such thing as an unknown or contingent event and that therefore record title is not the subject of an insurance contract.   In support of this proposition, reliance is placed upon section 1213 of the Civil Code. ''Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees. . . . ''   That section exists for the protection of those who acquire interests in real property by virtue of duly recorded written instruments.   This is far from preventing the record title from being the subject of insurance. On the contrary, it is the reason for insurance in favor of one who is affected by such constructive notice and who relies upon a title insurance company and its certificate as protection against the legal consequences of such notice. This was recognized by the supreme court in the case of *Bothin* v. *California Title Ins. & T. Co.,* 153 Cal. 718, 722 [Ann. Cas. 1914D, 634, 96 Pac. 500, 502], where the court said: ''Necessarily the record title is all that a title insurance company can safely or judiciously insure.   While the title to real property may be disclosed by the record to be in one person, it may, in fact, be in another through

adverse possession or in one in occupation of the property under an unrecorded conveyance. It is the possibility of the existence of these conditions as to the title which an insurance company provides against by insuring the record title, and none other.''

[4] The fact that the form of guaranty certificate issued by the plaintiffs does not specify all of the facts set forth in section 2587 of the Civil Code does not deprive it of its character as an insurance contract. Since, as written, it is sufficiently defined as a contract of indemnity for which a consideration exists, we think that the insurer could not defend against liability as an insurer on such contract, which it made with a known party, simply because the certificate does not name the insured or specify his interest in the property (unless he be the person in whom the title is certified to be vested), or state the rate of premium or the period during which the insurance is to continue.

Anticipating that respondents might rely upon the provisions of section 453v of the Civil Code, defining title insurance policies, and which was added to that code in the year 1913, appellant contends that the section may not be construed as applicable to the questions of taxation presented in this case, because the section of the constitution to which we have referred is in its application limited to such insurance business as was known to the law in the year 1910, when section 14 of article XIII was adopted. But if, in accordance with the opinion which we have expressed, the issuance of these certificates of guaranty does constitute insurance business without the aid of said section 453v, then the point stated is of no importance in this case. It is worthy of note, however, that subdivision (b) of said section 14, which we have quoted, refers to ''every insurance company or association doing business in this state,'' and not to any selected or particular kinds of insurance business. It readily may be conceded that the legislature could not by its mere enactment of a statute effectually transform into insurance business a business lacking in the elements of insurance. But we think that if a business having the characteristics of insurance business should for the first time come into existence within this state after the year 1910,

it would nevertheless be subject to the provisions of said section of the constitution.

The judgments are affirmed.

James, J., and Houser, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 30, 1923.