[No. B075390. Second Dist., Div. Five. Apr. 12, 1994.]

GENE A. TABACHNICK, Plaintiff and Appellant, v.
TICOR TITLE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Gene A. Tabachnick, in pro. per., Bright & Lorig and Sidford Lewis Brown for Plaintiff and Appellant.

Aran & Miller and Kenneth J. Aran, Jeff Berke and Joel P. Schiff for Defendant and Respondent.

**OPINION**

**ARMSTRONG, J.**—Plaintiff Gene A. Tabachnick appeals the order dismissing his suit against defendant Ticor Title Insurance Company following Ticor's successful demurrer based on the statute of limitations.

## FACTS[1]

On July 18, 1986, Tabachnick purchased a condominium unit in New Jersey (the Property) in which a tenant then resided. According to Tabachnick, the seller of the Property represented to him that the tenant could be evicted under New Jersey law after three years.

On September 4, 1986, Tabachnick purchased a policy of title insurance from Ticor insuring Tabachnick's title to the property (the Policy). The following "Covered Title Risks," among others, were included under the terms of the Policy:

"(1)  Someone else owns an interest in your title.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(3)  Forgery, fraud, duress, incompetency, incapacity or impersonation.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(9)  Others have rights arising out of leases, contracts, or options. . . ."

The Policy provisions included the following duty to defend Tabachnick's title: "We will defend your title in any court case as to that part of the case that is based on a Covered Title Risk insured against by this Policy. We will pay the costs, attorneys' fees, and expenses we incur in that defense." The Policy also provided that the insured was to give prompt notice of any claims against title, and that the insured's failure to give prompt notice could reduce Ticor's obligation to the insured if its ability to dispose of or to defend the claim were thereby impaired.

After purchasing the Property and the Policy, Tabachnick discovered that there was a recorded document granting a 40-year protected tenancy to his tenant, pursuant to the New Jersey Senior Citizen and Disabled Protected Tenancy Act, New Jersey Statutes Annotated section 2A:18-61.22. The existence of this undisclosed document was a title risk which the Policy insured against. On January 18, 1989, without having submitted a notice of claim or proof of loss to Ticor, Tabachnick filed a lawsuit in New Jersey against the individuals and entities involved in his purchase of the condominium, alleging fraud, misrepresentation and breach of contract and seeking damages resulting from his tenant's protected tenancy status.

On December 27, 1991, nearly three years after he filed the New Jersey action, Tabachnick submitted a claim to Ticor demanding that Ticor pay the

---

[1]We accept as true all material facts properly pleaded in Tabachnick's complaint. (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 [197 Cal.Rptr. 783, 673 P.2d 660].)

fees and costs incurred in prosecuting that lawsuit. On March 6, 1992, Ticor refused the tender.[2] Nine months later, on December 24, 1992, Tabachnick filed the instant action against Ticor for breach of the contract of insurance and for tortious breach of the covenant of good faith and fair dealing.[3]

The trial court sustained Ticor's demurrer to Tabachnick's action, ruling that the two-year statute of limitations period set forth in Code of Civil Procedure section 339, subdivision 1 (hereafter section 339(1)),[4] precluded Tabachnick from pursuing his suit against Ticor. Tabachnick cites that finding as error.

## DISCUSSION

The issue presented to us on this appeal is this: When does a cause of action against an insurer arising under a title insurance policy accrue? The Supreme Court purported to answer this very question in *Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1079 [282 Cal.Rptr. 445, 811 P.2d 737]. There, Commonwealth Land Title Insurance Company issued a title insurance policy to Lambert in January 1984, covering the latter's title as owner of residential real property. In November 1984, the adjoining property owner filed an action claiming an easement by implication over the property covered by the policy. Lambert tendered defense of the action to Commonwealth. In April 1985, Commonwealth denied coverage under the policy. Lambert successfully defended the underlying suit, and judgment was entered in October 1987.

Within one year after entry of the judgment, Lambert filed suit against Commonwealth for wrongful refusal to defend. The trial court sustained Commonwealth's demurrer, ruling that the action was barred by the two-year statute of limitations set forth in section 339(1).

The Supreme Court opinion contained two significant holdings, only one of which is pertinent to this appeal. First, after analyzing the accrual language of section 339(1) together with the provisions of Code of Civil Procedure section 312, the court confirmed the holding of *Central Bank* v.

---

[2]The basis for Ticor's refusal of the tender does not appear in the record.

[3]While the complaint does not separately state causes of action for breach of contract and tortious breach of the covenant of good faith and fair dealing, it does contain statements of facts supporting both causes of action. (Code Civ. Proc., § 425.10.)

[4]That section prescribes a two-year period for commencing "an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder." (§ 339(1).)

*Transamerica Title Ins. Co.* (1978) 85 Cal.App.3d 859 [149 Cal.Rptr. 822] that the cause of action arising under a title insurance policy "accrues upon discovery of loss or harm, i.e., when the insurer refuses to defend." (*Lambert v. Commonwealth Land Title Ins. Co., supra*, 53 Cal.3d at p. 1077.) The court went on to hold that the statute is equitably tolled during the period after the insurer refuses coverage and before final judgment in the underlying suit is entered. (*Ibid.*) Applying the foregoing law to the facts before it, the *Lambert* court held that the insured's cause of action against Commonwealth accrued on April 26, 1985, when the insurer denied coverage, but was thereafter tolled until completion of the underlying action.[5]

Tabachnick maintains that *Lambert* mandates reversal: *Lambert* specifically says that ". . . the limitation period for an action under a title insurance policy for failure to defend accrues when the insurer refuses the insured's tender of defense, . . ." (53 Cal.3d at p. 1080.) Tabachnick sued Ticor for breach of the duty to prosecute/defend nine months after Ticor refused to prosecute/defend. Therefore Tabachnick's suit was timely. In essence, Tabachnick interprets *Lambert* to mean that the aggrieved party under a title policy will never discover its loss or damage, and thus a cause of action will not accrue, unless and until the insurer denies coverage. However, while Tabachnick correctly recites the holding of *Lambert*, his reading of that case seems much too broad: It suggests that, contrary to the plain language of section 339(1), the commencement of the running of the statute of limitations in title insurance cases is wholly within the power of the insured; that is to say, regardless of how long an insured delays giving notice of a claim to its insurer, the statute of limitations will never bar the insured's suit against the insurer so long as it is brought within two years after the insurer denies coverage. ■ This interpretation of *Lambert* is wholly at odds with the rationale of statutes of limitations, expressed by the Supreme Court in *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 898 [218 Cal.Rptr. 313, 705 P.2d 886] as follows: "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

■ Ticor contends that the statutory language triggering accrual of the cause of action, that is, "discovery of the loss or damage suffered by the aggrieved party," refers to the claim against title which gives rise to the insurer's potential obligations under the title policy. Ticor seeks to distinguish *Lambert* on its facts, stating that "Nothing in *Lambert* suggests that it

---

[5]It is important to note that only that portion of *Lambert* interpreting section 339(1)'s accrual language is pertinent to this appeal. Tabachnick filed suit within two years after Ticor denied coverage, and thus the equitable tolling provisions of *Lambert* are not implicated in this case.

intended to hold that *the only time* a cause of action will accrue in an action against a title insurer is when the tender of a claim by the insured is denied." However, Ticor's interpretation of section 339(1) is also unsatisfactory, since it seems to ignore the plain language of *Lambert*. In Ticor's view, Tabachnick's cause of action arose when he discovered his tenant's protected tenancy status. Applying that analysis to the facts in *Lambert*, the statute in the latter case should have commenced to run in November 1984, when the insured was sued. And that conclusion would be consistent with the Supreme Court's analysis in *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230], a first party casualty insurance case decided eight months prior to *Lambert*. However, that is not what *Lambert* said. Rather, the court concluded that the statute commenced to run six months later, when the insurer denied coverage.

Ticor attempts to reconcile the different result by noting that *Lambert* was a duty to defend case, while the instant case is not. The best that can be said of Ticor's argument is that it is a distinction without a difference. Every time a title insurer refuses to defend a case, or, when an attack on title has arisen but has not ripened into a lawsuit, declines to choose among the alternative policy methods of responding to the adverse claim which includes instituting legal action, it is necessarily refusing coverage under the policy. It is the refusal of coverage which precipitates the insured's lawsuit against the title insurer.

Because *Lambert* does not provide us with a clear-cut answer, we look to the reasoning of the Court of Appeal in *Central Bank* v. *Transamerica Title Ins. Co.*, *supra*, 85 Cal.App.3d 859, which *Lambert* discussed at length, to ascertain when Tabachnick's cause of action against Ticor accrued. There, the plaintiff, Central Bank, had made a construction loan and received a title insurance policy from defendant Transamerica Title Insurance Company. In February 1983, a subordinated lienor filed an action against Central Bank alleging that the bank had breached the conditions of subordination and, therefore, the junior lien was senior to Central Bank's lien. Central Bank engaged counsel in March 1973, and Transamerica rejected a tender of defense in November 1973. A judgment in that action was rendered against Central Bank in December 1975.

Central Bank filed suit against Transamerica in March 1976, alleging wrongful refusal to defend. Transamerica demurred on statute of limitations grounds. The insured argued that its cause of action for breach of the duty to defend did not accrue until judgment was entered in the underlying action. The Court of Appeal determined, however, that under the language of section 339(1), Central Bank's cause of action under the policy "accrued

when [the insured] suffered appreciable harm. . . ." The court further determined that Central Bank suffered appreciable harm at the very latest when Transamerica refused the tender of defense and denied liability in November 1973, and more likely when it incurred attorney fees in March 1973. In its analysis of the problem, the court in *Central Bank* introduced a new threshold requirement for accrual of a cause of action on a title insurance policy, that is, suffering of appreciable harm, which appears nowhere in the language of section 339(1). The concept of appreciable harm was, in turn, adopted from a legal malpractice case (*Budd* v. *Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433]) and a breach of confidence case (*Davies* v. *Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]), neither of which involved a breach of contract. While incurring a loss has always been a prerequisite to accrual of a cause of action in tort, it has never been a requirement in contract law.

In *Lambert*, the Supreme Court confirmed *Central Bank*'s holding that the cause of action in that case accrued upon the insurer's refusal to defend.[6] (*Lambert* v. *Commonwealth Land Title Ins. Co., supra,* 53 Cal.3d 1072, 1077.) The court did not comment, however, on the reasoning behind *Central Bank*'s conclusion, i.e., that the insured does not suffer appreciable harm, and thus the cause of action does not accrue, until the insurer refuses coverage and the insured is forced to incur attorney fees or suffer a default judgment.

*Lambert* does not expressly adopt the appreciable harm analysis of *Central Bank*, although it perhaps adopts it by implication. If this were in fact the court's intention, its holding fixing the date of accrual of the insured's cause of action in April 1985, when the insurer refused the tender of defense, rather than November 1984, when the insured learned of the adverse claim, could be comfortably reconciled with section 339(1). That is to say, the court would have interpreted the "discovery of the loss or damage" language of section 339(1) to mean that the cause of action on a title policy accrues when the insured discovers the adverse claim *and* incurs a monetary loss as a result of that claim. Under that analysis, we would affirm the trial court's order sustaining Ticor's demurrer, since on the face of his complaint, Tabachnick suffered appreciable harm no later than when he filed his New Jersey lawsuit.

We are not entirely comfortable embracing the foregoing analysis, since it requires us to conclude, by implication, that the Supreme Court has mandated a new "appreciable harm" element to the accrual of causes of action on

---

[6]However, the Supreme Court disapproved *Central Bank*'s holding that the statute of limitations was not tolled during the period after the insurer denied coverage and before final judgment in the underlying suit was entered.

title insurance policies. However, we need not rely on this analysis, since analogy to a prior case not cited by *Lambert* leads to the same outcome. More than 60 years ago, the Court of Appeal, interpreting section 339(1), described the accrual of the cause of action upon a certificate of guaranty as follows: "[T]he party entitled to the benefit of the guaranty has a right of action to recover upon the contract contained in the certificate itself, and the liability is one that does not accrue until discovery of the loss that may be incurred if the title is not as represented in the certificate." (*Title Ins. & Trust Co.* v. *Los Angeles* (1923) 61 Cal.App. 232, 236 [214 P. 667].) The conclusion that the cause of action on a certificate of guaranty accrues when the holder of the certificate discovers the potential loss applies equally to a policy of title insurance, though a certificate of guaranty and a title insurance policy differ in certain other respects. We cannot discern any intention on the part of the Supreme Court in *Lambert* to disavow this principle. We therefore conclude that in this case, Tabachnick's cause of action against Ticor accrued when he discovered the protected tenancy status of his tenant, which occurred no later than January of 1989 when he filed suit in New Jersey. He then had two years in which to commence his action against Ticor. In order to avail himself of the holding in *Lambert*, Tabachnick was required to demand benefits under the Policy within the two-year statutory period. If he had made demand within that period and then had to prosecute a suit to protect his title, *Lambert* would apply to toll the statute of limitations until that lawsuit was concluded.

Instead, however, Tabachnick's cause of action on the title policy expired in January 1991, two years after commencement of the underlying suit. Thereafter, when Tabachnick tendered his claim to Ticor, Ticor no longer had any enforceable obligation to Tabachnick, either to indemnify, to prosecute, to defend or to take any other action, with respect to the tenancy-related "defect" of Tabachnick's title. The trial court therefore correctly sustained Ticor's demurrer without leave to amend.

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Godoy Perez, J., concurred.

Petitions for a rehearing were denied May 12, 1994, and appellant's petition for review by the Supreme Court was denied June 30, 1994.